IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CLARENCE SAMPSON,   #208957,          ) | Civil Action No. 3:08-1717-GRA-JRM |
|                                       ) | |
| Plaintiff,      ) | |
|                                       ) | |
| vs.                                   ) | |
|                                       ) | |
| JON OZMINT, SCDC DIRECTOR;            ) | |
| TIM RILEY, WARDEN TYGER RIVER;        ) | |
| NFN RABB, TYGER RIVER CLASSIFICATION; ) | |
| NFN FOWLER, TYGER RIVER               ) | |
| GRIEVANCE COOR.,                      ) | |
|                                       ) | **REPORT AND RECOMMENDATION** |
| Defendants    ) | |
|                                       ) | |
| _____   ) | |

Plaintiff filed this action on April 24, 2008.[1] He is an inmate at the Tyger River Correctional Institution ("TRCI") of the South Carolina Department of Corrections ("SCDC"). Defendants are SCDC Director Jon Ozmint ("Ozmint"), TRCI Warden Tim Riley ("Riley"), TRCI caseworker NFN Rabb ("Rabb"), and TRCI Grievance Coordinator NFN Fowler. On October 7, 2008, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on October 8, 2008 pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on October 15, 2008.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

MOTION REQUESTING SEPARATION

On September 11, 2008, Plaintiff filed a motion "requesting separation." He claims that he is being harassed and retaliated against for filing this action. Specifically, he alleges that SCDC officers have accused him of "bogus" disciplinary offenses, SCDC Officer Ridings ("Ridings") made racist remarks to him, and Warden Riley refused to do anything about Ridings. Plaintiff requests that he be transferred to another institution. Defendants contend that Plaintiff's motion should be denied because he fails to demonstrate irreparable injury or the likelihood of harm if he is not granted a transfer. Additionally, Defendants contend that Plaintiff failed to exhaust his administrative remedies as to any claims concerning disciplinary offenses or alleged racial comments.

The undersigned construes this pleading as a motion for preliminary injunctive relief. The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c) the injury to defendant if an injunction is issued; and
>
> (d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749, 750 (4th Cir. 1979).

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff's motion for injunctive relief should be denied because Plaintiff is unlikely to be successful in the underlying dispute between the parties, as discussed below. He is also unlikely to suffer irreparable injury if interim relief is denied.

Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

Plaintiff claims that he has been subjected to bogus disciplinary charges. If Plaintiff is complaining about disciplinary proceedings, or the outcome of any disciplinary proceedings, those claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that

prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck).

Plaintiff claims that Ridings made racial remarks to him. Ridings is not a party to this action. Plaintiff also claims that he complained to Riley and filed a request to staff form concerning the alleged racial remarks by Ridings. The form, however, is dated September 9, 2008, only three days prior to the filing of his motion, such that it unclear that Riley received it or was able to act on the request prior to Plaintiff filing his motion.

Even if the alleged racially derogatory remarks were made, such undeniably deplorable and unprofessional behavior does not by itself rise to the level of a constitutional violation. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987); Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999). Defamatory statements alone do not state a cognizable claim under 42 U.S.C. § 1983. Paul v. Davis, 424 U.S. 693 (1976).

Additionally, although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.").

MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that Defendants have violated his constitutional and statutory rights by incorrectly calculating his "max-out" or release from custody date. He requests that SCDC change his release date to July 28, 2012, and that he receive monetary damages for emotional distress and psychological stress. Complaint at 12. Defendants contend that they are entitled to summary

judgment because: (1) Plaintiff fails to state a claim upon which relief can be granted; (2) Plaintiff's release date has been calculated in conformity with the applicable statute; (3) Plaintiff failed to exhaust all of his available remedies; (4) the matters asserted by Plaintiff do not fall within the scope of 42 U.S.C. § 1983; (5) Defendants are entitled to qualified immunity; (6) Defendants are entitled to Eleventh Amendment immunity; (7) Defendants are not "persons" under § 1983 in their official capacities; (8) Defendants Ozmint and Riley cannot be held liable on a theory of supervisory liability; and (9) any state law claims against Defendants should be dismissed as a matter of law pursuant to the South Carolina Tort Claims Act.

    1.    <u>Calculation of Sentence</u>

Plaintiff alleges that his max-out or release date has been improperly calculated. He appears to claim that he is only required to serve eighty-five percent of his eighteen year sentence, such that the granting or taking away of good time or work credits would not effect his release date. He appears to assert that his release date should always be July 28, 2012 (85% of his 18 year sentence). Defendants contend that Plaintiff's release date has been calculated in conformity with the applicable statutes.[2] They provide that Plaintiff has a maximum release date of eighteen years

---

[2] South Carolina Code Ann. § 24-13-150 governs mandatory sentences in cases of prisoners convicted of "no parole" offenses (Plaintiff does not dispute that he has been convicted of a no parole offense) and provides, in part:
> (A) [A] prisoner convicted of a "no parole offense" ... is not eligible for early release, discharge, or community supervision as provided in Section 24-21-560, until the prisoner has served **at least eighty-five percent** of the actual term of imprisonment imposed. This percentage must be calculated without the application of earned work credits, education credits, or good conduct credits, and is to be applied to the actual term of imprisonment imposed, not including any portion of the sentence which has been suspended....
> (B) **If a prisoner confined in a facility of the department commits an offense or violates one of the rules of the institution during his term of imprisonment, all**

(continued...)

and a minimum release date of eighty-five percent of his sentence. Defendants further provide that Plaintiff had credits taken away from him as a result of disciplinary actions, which has resulted in a later release date (but that his release date will never extend beyond 100% of his sentence). See Riley Aff.

As noted in the undersigned's June 6, 2008 Order, the requested relief of a correction of a max-out or release date may be obtained only in a habeas action. See Preiser v. Rodriguez, 411 U.S. 475 (1973)(complaint or petition challenging the fact or duration of confinement should be construed and processed as a habeas corpus petition, while a complaint or petition challenging the conditions of confinement should be construed and processed as a complaint pursuant to 42 U.S.C. § 1983). If Plaintiff wishes to challenge the duration of his confinement, he must obtain habeas forms from the Clerk of Court and file a separate action.[3] Also, as noted above, if Plaintiff is

---

[2](...continued)
**or part of the credit he has earned may be forfeited** in the discretion of the Director of the Department of Corrections....The decision to withhold credits is solely the responsibility of officials named in this subsection.
S.C. Code Ann. § 24-13-150 (emphasis added). South Carolina Code Ann. § 24-13-210 governs credits given to inmates for good behavior. This section provides, in part:
A prisoner convicted of a "no parole offense" ... whose record of conduct shows that he has faithfully observed all the rules of the institution where he is confined and has not been subjected to punishment for misbehavior, is entitled to a deduction from the term of his sentence beginning with the day on which the service of his sentence commences to run, computed at the rate of three days for each month served....No prisoner convicted of a "no parole offense" is entitled to a reduction below the minimum term of incarceration provided in Section 24-13-125 or 24-13-150.
S.C. Code Ann. § 24-13-210.

[3]Plaintiff should also note that a writ of habeas corpus under either 28 U.S.C. § 2241 or § 2254 can only be sought after he has exhausted all of his remedies in the courts of the State of South Carolina. See Picard v. Connor, 404 U.S. 270 (1971); Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 490-491 (1973). There is no indication here that Plaintiff has appealed the final decision of the SCDC pursuant to the South Carolina Administrative Procedures Act ("APA"),
(continued...)

complaining about disciplinary proceedings, or the outcome of any disciplinary proceedings, those claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997).

    2.    Grievances

Plaintiff alleges that Defendants failed to properly process his grievances concerning the calculation of his sentence. Defendants contend that Plaintiff's claims concerning grievances fail because the constitution does not create an entitlement to a grievance procedure. They appear to argue that Plaintiff's grievances were properly processed.

Contrary to Plaintiff's claim, it appears that Defendants processed Plaintiff's grievance filed on May 18, 2008.[4] Defendants submitted documents indicating that Plaintiff's Step 1 grievance was answered on May 26, 2008, and Plaintiff signed that the form to indicate that he wished to appeal on June 26, 2008. The Warden answered Plaintiff's appeal on July 9, 2008. Plaintiff filed a Step 2 grievance on July 11, 2008. A decision on his Step 2 grievance was made on August 6, 2008. On August 26, 2008, Plaintiff signed the Step 2 grievance form, acknowledging receipt of the official's

---

[3](...continued)
S.C.Code Ann. § 1-23-310 through § 1-23-400. See Al-Shabazz v. South Carolina, 527 S.E.2d 742, 754-756 (S.C. 2000). Under the APA, if an inmate is not satisfied with the agency's final decision, the prisoner must first file an appeal with the South Carolina Administrative Law Court ("ALC"). See S.C.Code Ann. § 1-23-380; Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35, 37-38 (S.C. 2007) (ALC had jurisdiction over loss of good-time credits which inmate was unable to earn due to reprimand for a rule infraction); see also Dicks v. South Carolina Dep't of Corr., No. 06-663, 2006 WL 1207851 (D.S.C. May 2, 2006). Here, there is no indication that Plaintiff filed an appeal with the ALC.

[4]Plaintiff states that he first filed a grievance about this matter on October 22, 2007, which was returned to him with instructions for him to try to resolve the matter with his case manager. Plaintiff spoke with Rabb and afterwards was advised to re-file his grievance, which he did.

response and indicating his understanding that it was the Agency's final response to the matter. See Attachments to Riley Aff.

Plaintiff fails to establish a constitutional claim concerning the processing of his grievances or the grievance system at SCDC. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d at 75. Even assuming that Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994). Further, allegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

3.     Supervisory Liability

Defendants Ozmint and Riley contend that Plaintiff fails to state a claim against them[5] and they cannot be held liable under a theory of respondeat superior or vicarious liability. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

---

[5]Plaintiff named Ozmint and Riley as defendants, but does not allege any specific or general acts or conduct on their part which violated his constitutional rights.

Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Ozmint and/or Riley were personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that these Defendants were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of SCDC employees. Thus, Plaintiff fails to show that Defendants Ozmint and/or Riley are liable on a theory of respondeat superior or supervisory liability.

4.  Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly

established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

    5.    <u>State Law Claims</u>

Defendants contend that they are entitled to immunity from any state law claims under the South Carolina Tort Claims Act. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed.

<u>CONCLUSION</u>

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 21) be granted. It is also recommended that Plaintiff's motion requesting separation (Doc. 18) be denied.

                                            Joseph R. McCrorey
                                            United States Magistrate Judge

April 7, 2009
Columbia, South Carolina

    **The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).